**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 17 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

PLANNED PARENTHOOD OF THE
ROCKY MOUNTAINS SERVICES
CORPORATION; PETER A. VARGAS,
M.D.; BOULDER ABORTION CLINIC,
P.C.; WARREN M. HERN, M.D.; JAMES
A. MCGREGOR, M.D.; MICHAEL D.
RUDNICK, M.D.; ARIS M. SOPHOCLES,
JR., M.D.; and WOMEN'S CHOICE OF
BOULDER VALLEY, INC.,

        Plaintiffs - Appellees,

  v.

WILLIAM OWENS, in his official
capacity as Governor of the State of
Colorado; DAVID J. THOMAS, in his
official capacity as District Attorney for
the First Judicial District, State of
Colorado; A. WILLIAM RITTER, JR., in
his official capacity as District Attorney
for the Second Judicial District, State of
Colorado; GLENN DAVIS, in his official
capacity as District Attorney for the Third
Judicial District, State of Colorado;
JEANNE MARIE SMITH, in her official
capacity as District Attorney for the Fourth
Judicial District, State of Colorado;
MICHAEL GOODBEE, in his official
capacity as District Attorney for the Fifth
Judicial District, State of Colorado;
SARAH LAW, in her official capacity

No. 00-1385

as District Attorney for the Sixth Judicial District, State of Colorado; WYATT ANGELO, in his official capacity as District Attorney for the Seventh Judicial District, State of Colorado; STUART A. VAN MEVEREN, in his official capacity as District Attorney for the Eighth Judicial District, State of Colorado; MARK MCLUCAS MYERS, in his official capacity as District Attorney for the Ninth Judicial District, State of Colorado; GUS SANSTROM, in his official capacity as District Attorney for the Tenth Judicial District, State of Colorado; EDWARD J. RODGERS, III, in his official capacity as District Attorney for the Eleventh Judicial District, State of Colorado; ROBERT PASTORE, in his official capacity as District Attorney for the Twelfth Judicial District, State of Colorado; MARK ADAMS, in his official capacity as District Attorney for the Thirteenth Judicial District, State of Colorado; PAUL R. MCLIMANS, in his official capacity as District Attorney for the Fourteenth Judicial District, State of Colorado; RONALD F. FOSTER, in his official capacity as District Attorney for the Fifteenth Judicial District, State of Colorado; GARY STORK, in his official capacity as District Attorney for the Sixteenth Judicial District, State of Colorado; ROBERT S. GRANT, in his official capacity as District Attorney for the Seventeenth Judicial District, State of Colorado; JAMES PETERS, in his official capacity as District Attorney for the Eighteenth Judicial District, State of

- 2 -

Colorado; AL DOMINGUEZ, in his official capacity as District Attorney for the Nineteenth Judicial District, State of Colorado; ALEXANDER M. HUNTER, in his official capacity as District Attorney for the Twentieth Judicial District, State of Colorado; FRANK J. DANIELS, in his official capacity as District Attorney for the Twenty-First Judicial District, State of Colorado; and MICHAEL F. GREEN, in his official capacity as District Attorney for the Twenty-Second Judicial District, State of Colorado,

Defendants - Appellants,

------------------------

COLORADO PRO LIFE ALLIANCE, INC.; UNITED FAMILIES INTERNATIONAL, INC.; SOCIETY FOR ADOLESCENT MEDICINE; COLORADO CHAPTER OF THE AMERICAN ACADEMY OF PEDIATRICS; AMERICAN MEDICAL WOMEN'S ASSOCIATION; and AMERICAN PUBLIC HEALTH ASSOCIATION,

Amici Curiae.

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 99-WM-60)**

Maurice G. Knaizer, Deputy Attorney General (Ken Salazar, Attorney General, John S. Sackett, Assistant Attorney General, State of Colorado, Denver, Colorado; A. William Ritter, Jr., District Attorney, Henry R. Reeve, Deputy District

Attorney, Second Judicial District, Denver, Colorado; and Jeanne M. Smith, District Attorney, Fourth Judicial District, Colorado Springs, Colorado, with him on the briefs), for Defendants-Appellants.

Jennifer Ellen Dalven, American Civil Liberties Union Foundation Reproductive Freedom Project, New York, New York (Louise Melling, American Civil Liberties Union Foundation Reproductive Freedom Project, New York, New York, Edward T. Ramey, Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, Colorado, Tim Atkeson and Keri Howe, Arnold & Porter, Denver, Colorado, Mark Silverstein, American Civil Liberties Union Foundation of Colorado, Denver, Colorado, Kevin C. Paul, Planned Parenthood of the Rocky Mountains, Inc., Denver, Colorado, with her on the brief), for Plaintiffs-Appellees.

Paul Benjamin Linton, Northbrook, Illinois, filed an amici curiae brief on behalf of the Colorado Pro Life Alliance, Inc., and United Families International, Inc., in support of Defendants-Appellants.

A. Stephen Hut, Jr., Kimberly A. Parker, and Julie M. Riewe, Wilmer, Cutler & Pickering, Washington, D.C., filed an amici curiae brief on behalf of the Society for Adolescent Medicine, the Colorado Chapter of the American Academy of Pediatrics, the American Medical Women's Association, and the American Public Health Association, in support of Plaintiffs-Appellees.

---

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Plaintiffs filed suit seeking to have a Colorado statute regulating abortion declared unconstitutional and to have enforcement of that statute enjoined. The district court granted summary judgment for plaintiffs, holding that the lack of a health exception for the parental notification requirement of the statute rendered

it unconstitutional. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I**

The Colorado Parental Notification Act ("PNA") was adopted as an initiative in Colorado's general election of November 3, 1998.[1] It generally requires that minors in the state of Colorado provide notice to at least one of their parents before obtaining an abortion. The legislative declaration of the act states:

> The people of the state of Colorado . . . declare that family life and the preservation of the traditional family unit are of vital importance to the continuation of an orderly society; that the rights of parents to rear and nurture their children during their formative years and to be involved in all decisions of importance affecting such minor children should be protected and encouraged, especially as such parental involvement relates to the pregnancy of an unemancipated minor, recognizing that the decision by any such minor to submit to an abortion may have adverse long-term consequences for her.

Colo. Rev. Stat. § 12-37.5-102.

Performance of an abortion on an "unemancipated minor" is specifically prohibited until at least forty-eight hours after written notice is delivered to the minor's parent, guardian, or foster parent. Id. §§ 12-37.5-103(2), -104(1). Violation of the PNA is a class one misdemeanor and creates liability for civil damages. Id. § 12-37.5-106(1).[2]

---

[1] The full text of the PNA is set out in the Appendix to this Opinion.

[2] The statute also provides that "[a]ny person who counsels, advises, encourages or conspires to induce or persuade any pregnant minor to furnish any physician with false information . . . concerning the minor's age, marital status or

(continued...)

There are two exceptions to the PNA's notice requirement. First, the notice requirement does not apply if the persons entitled to notice certify in writing that they have already been notified. Id. § 12-37.5-105(a). Second, the notice requirement does not apply if the minor declares that she is a victim of child abuse or neglect by the persons entitled to notice, and the physician reports this fact in accordance with Colorado law. § 12-37.5-105(b). Two affirmative defenses to liability also exist. First, the physician is absolved from liability if he shows that he reasonably relied upon representations by the minor indicating compliance with the PNA. Id. § 12-37.5-106(2)(a). Second, the physician can show that the abortion was necessary to prevent the imminent death of the minor and that there was insufficient time to provide the required notice. § 12-37.5-106(2)(b).

Plaintiffs filed suit challenging the constitutionality of the PNA on December 22, 1998.[3] Named defendants originally were the governor of Colorado and one local district attorney; the suit was later expanded to include all local

---

[2](...continued)
any other fact or circumstance to induce . . . the physician to perform an abortion" without written notice can be found guilty of a class five felony. Colo. Rev. Stat. § 12-37.5-106(3).

[3] The suit was originally filed in Colorado state court but was removed to federal court by defendants. Planned Parenthood of the Rocky Mountains Servs. Corp. v. Owens, 107 F. Supp. 2d 1271, 1274–75 (D. Colo. 2000).

district attorneys in Colorado.[4] One of plaintiffs' claims was that the PNA was facially unconstitutional because it lacked an exception permitting a physician to perform an abortion without notice or a waiting period even when necessary to protect the health of the pregnant minor.[5] Planned Parenthood of the Rocky Mountains Servs. Corp. v. Owens, 107 F. Supp. 2d 1271, 1275 (D. Colo. 2000). The district court granted summary judgment for plaintiffs on this claim. Id. at 1276.

We review the district court's grant of summary judgment de novo. Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[4] Hereinafter, we refer to defendants collectively as "the State."

[5] Plaintiffs' other claims were (1) that the PNA violates the federal constitution by failing to provide a judicial bypass for the parental notification provision for mature, abused, or "best interest" children; (2) that the existing judicial bypass provision in the PNA does not adequately protect federal constitutional rights; (3) that the PNA violates state due process rights; (4) that the PNA violates state separation of powers; and (5) that the PNA's definition of abortion violates the federal constitution by requiring parental notification for the use of contraception by minors. Planned Parenthood, 107 F. Supp. 2d at 1275.

Plaintiffs' contraception claim was dismissed after the district court granted the State's motion for partial summary judgment pursuant to a joint motion by the parties. Id. at 1276. Because relief was granted to plaintiffs on the health exception claim, the district court did not address the other federal constitutional claims. The state constitutional claims were dismissed without prejudice by the district court. Id.

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmovant. Simms, 165 F.3d at 1326. "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." Id. (quotation omitted). In the absence of a genuine issue of material fact, we determine whether the district court correctly applied the substantive law. Id.

## II

Key to resolution of this case is our answer to this question: Does the United States Constitution, as interpreted by the Supreme Court, require that state abortion regulations provide a health exception where such an exception is necessary to ensure that those regulations do not threaten the health of a pregnant woman? If the answer is yes, then a subsidiary and related question that we must also answer is: What is the appropriate standard of review to apply when a lawsuit challenges an abortion statute for failing to provide a health exception?

## A

Three cases are essential to answering the first question: Roe v. Wade, 410 U.S. 113 (1973), which established the current constitutional principles regarding

abortion; Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833 (1992), which reaffirmed and refined the holdings of Roe; and Stenberg v. Carhart, 530 U.S. 914 (2000), which is the most recent holding by the Supreme Court on the constitutional requirements for a health exception for abortion regulations.

Roe established the importance of protecting the health of pregnant women in the context of abortion regulation. One of the three central holdings of Roe is that for the stage of pregnancy subsequent to viability, a state may regulate and even proscribe abortion, "except, where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." Roe, 410 U.S. at 165.

This holding was reaffirmed in Casey, where the Court stated in the clearest possible terms that abortion regulations cannot interfere with a woman's ability to protect her own health. The Casey Court emphasized that "the essential holding of Roe forbids a State from interfering with a woman's choice to undergo an abortion procedure if continuing her pregnancy would constitute a threat to her health." Casey, 505 U.S. at 880. In upholding Pennsylvania's abortion regulations, the Court found it crucial that the statute had a medical emergency exception to the application of the state regulations, and that the exception was broad enough "to assure that compliance with [the State's] abortion regulations

would not in any way pose a significant threat to the life or health of a woman." Id. (quotation omitted).

Roe and Casey directly address only state regulation of post-viability abortions, Roe, 410 U.S. at 164–65; Casey, 505 U.S. at 879 (joint opinion of O'Connor, Kennedy, and Souter, JJ.), a context in which the Court has held that a state has a "compelling" interest in protecting potential life, Roe, 410 U.S. at 163. This means that pre-viability, where the state's interest in regulation of abortion is weaker, the state would likewise have no constitutional power to infringe on the right of the pregnant woman to protect her health. In other words, at no time during the period of pregnancy may the state regulate abortion in a manner that infringes on the ability of a pregnant woman to protect her health. In Stenberg, the Court confirmed this deduction. "Since the law requires a health exception in order to validate even a postviability abortion regulation, it at a minimum requires the same in respect to previability regulation." 530 U.S. at 930.

Stenberg also confirmed that the lack of a health exception is a sufficient ground for invalidating a state abortion statute. Id. (announcing two "independent reasons" for invalidating the state abortion law in question, one of which was that "the law lack[ed] any exception for the preservation of the . . . health of the mother" (quotation omitted)); see also id. at 947 (O'Connor, J., concurring) ("[T]he Nebraska statute is inconsistent with Casey because it lacks an exception

for those instances when the banned procedure is necessary to preserve the health of the mother."). Even the dissent in <u>Stenberg</u> agreed that <u>Casey</u> and <u>Roe</u> require state abortion regulations to have health exceptions for those situations in which continuing a pregnancy would threaten the health of the mother. <u>Id.</u> at 1009 (Thomas, J., dissenting). The point of departure for the dissent regarded application of the foregoing standard to the facts in <u>Stenberg</u>. <u>Id.</u> (contending that <u>Roe</u> and <u>Casey</u> were inapplicable to the presented facts because they "say nothing at all about cases in which a physician considers one prohibited method of abortion to be preferable to permissible methods.").[6]

---

[6] Even before the Supreme Court affirmed the existence of the health-exception requirement in <u>Casey</u> and <u>Stenberg</u>, the Court was filling in the substance of that requirement in a series of cases. <u>See</u> <u>Thornburgh v. Am. Coll. of Obstetricians & Gynecologists</u>, 476 U.S. 747, 768–71 (1986) (invalidating a requirement that a second physician be present for all abortions where viability is possible because there was no health exception to the requirement), <u>overruled in part on other grounds by</u> <u>Planned Parenthood of Southeastern Pa. v. Casey</u>, 505 U.S. 833, 882–83 (1992); <u>Planned Parenthood Ass'n of Kan. City v. Ashcroft</u>, 462 U.S. 476, 485 n.8 (1983) (upholding a Missouri statute requiring two physicians to be present for third-trimester abortions because the statute could be interpreted to create a health exception to that requirement); <u>see also</u> <u>Harris v. McRae</u>, 448 U.S. 297, 316 (1980) ("[I]t could be argued that the freedom of a woman to decide whether to terminate her pregnancy for health reasons does in fact lie at the core of the constitutional liberty identified in [<u>Roe</u>].").

Although <u>Casey</u> overrules in part <u>Thornburgh</u>, <u>Thornburgh</u>'s essential holding regarding the health exception requirement was reaffirmed by <u>Casey</u>. <u>See</u> <u>Jane L. v. Bangerter</u>, 102 F.3d 1112, 1118 n.7 (10th Cir. 1996).

That the PNA regulates abortion performed for minors does not alter the constitutional requirements or mandates laid down by the Court regarding the necessity of a health exception. "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." Planned Parenthood of Cent. Mo. v. Danforth, 428 U.S. 52, 74 (1976). The State does not urge—and the Court has never ruled—that a state may constitutionally infringe on a minor's ability to protect her health through an abortion, or that the health exception requirement either does not apply or applies differently to minors.

Thus, the current state of the law is that state abortion regulations must provide an exception for the protection of the health of pregnant women where those regulations might otherwise infringe on their ability to protect their health through an abortion.[7]

_____

[7] The State argues that the analysis of whether a health exception is required for a particular state abortion regulation must proceed using the "undue burden" test laid out in Casey, a test that generally applies to state regulation of pre-viability abortion. Casey, 505 U.S. at 876–77 (joint opinion of O'Connor, Kennedy, and Souter, JJ.). However, the Stenberg Court implicitly concluded that the "undue burden" test does not apply to the determination of whether a health exception is required, and that the lack of a health exception is a separate, independent ground upon which a state abortion regulation may be invalidated. Stenberg, 530 U.S. at 930 (holding that the Nebraska statute is unconstitutional for "at least two independent reasons," the lack of a health exception and the

(continued...)

**B**

Although facial challenges to statutes generally require the plaintiff to show that there are no circumstances under which the law could be valid, see United States v. Salerno, 481 U.S. 739, 745 (1987), the standard of review for facial challenges to abortion statutes is quite different.

We have followed the majority of other circuits in holding that Casey altered the Salerno standard in the context of abortion cases, with the Casey "undue burden" test replacing the Salerno "no set of circumstances" test. See Jane L. v. Bangerter, 102 F.3d 1112, 1116 (10th Cir. 1996). Review of state pre-viability abortion regulations generally proceeds under Casey, which prescribes a showing that the state abortion regulation operates, "in a large fraction of the cases . . . as a substantial obstacle to a woman's choice to undergo an abortion." Casey, 505 U.S. at 895. The State concedes that the Salerno standard is inapplicable and assumes that our review should proceed under the Casey standard.

However, in Stenberg the Supreme Court departed in yet another manner from Salerno, relying on neither the Salerno "no set of circumstances" test nor the

---

[7](...continued)
imposition of an undue burden (emphasis added)). The proper analysis is thus to determine whether a health exception is necessary given the restrictions imposed by the PNA. See id. at 931. Our analysis, based on the facts conceded by the State and contained in the record, shows that a health exception is necessary.

- 13 -

<u>Casey</u> "undue burden" test in striking down Nebraska's "partial birth abortion ban" for lack of a health exception. <u>See</u> <u>Stenberg</u>, 530 U.S. at 938; <u>see also</u> <u>id.</u> at 1019 (Thomas, J., dissenting) (arguing that under the "no set of circumstances" test the Nebraska statute should not be declared facially unconstitutional). Without overruling or even citing <u>Salerno</u>, the Court instead held that in the absence of evidence that a health exception would "never [be] necessary to preserve the health of women," the statute must be declared unconstitutional. <u>Stenberg</u>, 530 U.S. at 937–38 (quotation omitted). The district court in this case implicitly reached this conclusion as well. <u>See</u> <u>Planned Parenthood</u>, 107 F. Supp. 2d at 1280 (concluding without discussing <u>Salerno</u> that <u>Stenberg</u> established a per se rule requiring a health exception). We will "follow what the Supreme Court actually did—rather than what it failed to say—and apply" the standard for reviewing abortion statutes laid out in <u>Stenberg</u>. <u>Planned Parenthood v. Miller</u>, 63 F.3d 1452, 1458 (8th Cir. 1995).

Applying that standard, if we conclude that the record shows that there is no genuine issue as to the material fact that the PNA will infringe on the ability of <u>any</u> pregnant woman to protect her health, we must hold the statute unconstitutional. Plaintiffs need not show that all, or even most, pregnant women who will be covered by the provisions of the PNA would have the right to protect their health infringed unconstitutionally by the PNA. <u>See</u> <u>Women's Med. Prof'l</u>

Corp. v. Voinovich, 130 F.3d 187, 196 (6th Cir. 1997) ("[A] post-viability abortion regulation which threatens the life or health of even a few pregnant women should be deemed unconstitutional.").

With these preliminary matters resolved, we address whether the Colorado statute meets the appropriate constitutional requirements.

## III

We first conclude that the evidence presented by the parties before the district court mandates that the PNA contain a health exception. We then reject the State's argument that the PNA may be interpreted to contain a constitutionally adequate health exception by reading into it a provision from Colorado's Children's Code. That rejection is compelled because (1) Colorado's principles of statutory interpretation do not allow us to consider such an interpretation; and (2) even if the PNA and the Children's Code arguably conflict, those principles of statutory interpretation would not allow us to read the Children's Code as superseding the PNA.

## A

Both parties agree that there are circumstances in which complications of a pregnancy may pose major health risks to the patient, including a threat to the patient's life. Planned Parenthood, 107 F. Supp. 2d at 1277. (9 App. at 2481, 2588; Appellants' Br. at 9.) The parties also agree that these medical

- 15 -

complications may require medical treatment during the mandatory forty-eight-hour waiting period of the PNA, and that treatment may necessitate an abortion as defined in the PNA. Planned Parenthood, 107 F. Supp. 2d at 1277. (9 App. at 2481–83; 12 id. at 3297; Appellants' Br. at 9.) Medical experts deposed on behalf of both defendants and plaintiffs stated that delays required by the PNA for the provision of an abortion to treat medical complications could result in significant harm to the health of a pregnant woman and that these medical complications could often arise in circumstances short of imminent death. Planned Parenthood, 107 F. Supp. 2d at 1277 & n.9. (1 App. at 203–208; 4 id. at 1047–1067, 1120-21; 5 id. at 1248–53; 6 id. at 1477–79, 1485, 1601–03, 1608–09; 9 id. at 2624–26.) Consequently, the PNA's affirmative defense for imminent death would not be available to treating physicians in such situations.

Stated more formalistically, the evidence before the district court at the time of plaintiffs' summary judgment motion showed (1) that there are circumstances in which pregnant minor women may be diagnosed by a physician with a pregnancy complication that could seriously threaten their health; (2) that such threatened harm may fall short of imminent death; and (3) that the forty-eight-hour delay required by the PNA would interfere with the medically

appropriate treatment—an abortion—for these women.[8]  Having carefully

reviewed the record, we agree with the district court that there is no genuine issue

as to the material fact that the PNA infringes on the ability of pregnant women to

protect their health.  We thus conclude that a health exception to Colorado's

Parental Notification Act is constitutionally required.

**B**

Although the State admits that "[w]ithin its four corners, the Act contains

no express exception when an abortion is necessary for the minor's health,"[9] it

---

[8]  The State disputes whether a form of pregnancy complication—ectopic pregnancy, where the fertilized egg is located somewhere other than the uterus—would be covered by the PNA, and whether termination of an ectopic pregnancy would be an abortion for purposes of the PNA.  As the district court noted, however, there are a number of other pregnancy complications the parties agree could pose major risks to the health of the pregnant minor, treatment for which may require an abortion as defined by the PNA and for which the forty-eight-hour waiting period of the PNA (or any delay at all) could endanger the health of the pregnant minor.  Planned Parenthood, 107 F. Supp. 2d at 1277 n.7.  Thus, we need not address the ectopic pregnancy issue to resolve this case.

[9]  The following state laws which require parental notice or consent for a minor to obtain an abortion also provide a medical exception where the minor's life or health is at risk.  See Ala. Code § 26-21-5 (requirements do not apply where medical emergency exists); Ariz. Rev. Stat. § 36-2152 (requirements do not apply where physician certifies immediate abortion necessary to avert death or serious risk of substantial and irreversible impairment of major bodily function of minor); Cal. Health & Safety Code § 123450 (consent not required if medical emergency exists); Del. Code Ann. tit. 24, § 1787 (requirements do not apply when medical emergency exists); Fla. Stat. ch. 390.01115 (notice not required when medical emergency exists and immediate abortion necessary to avert death or serious risk of substantial and irreversible impairment of major bodily function of minor); Ga. Code Ann. § 15-11-116 (requirements do not apply where medical

(continued...)

- 17 -

contends that such an exception should be imported from other provisions of

- 18 -

---

[9](...continued)
emergency exists); Idaho Code § 18-609A (consent not required where medical emergency exists); 750 Ill. Comp. Stat. 70/20 (notice not required where medical emergency exists); Ind. Code § 16-34-2-4 (requirements do not apply where continuation of pregnancy provides immediate threat and grave risk to life or health of minor); Iowa Code § 135L.3 (requirements do not apply where physician determines medical emergency exists); Kan. Stat. Ann. § 65-6705 (notice not required where emergency exists that threatens health, safety, or well-being of minor); Ky. Rev. Stat. 311.732 (requirements do not apply when medical emergency exists); La. Rev. Stat. Ann. § 40:1299.35.12 (provisions do not apply where medical emergency exists and continuation of pregnancy poses immediate threat and grave risk to life or permanent physical health of minor); Md. Code Ann., Health-Gen. I § 20-102 (minor has same capacity as adult to consent if physician determines life or health of minor would be affected adversely by delay); Mich. Comp. Laws § 722.905 (requirements do not apply if abortion performed pursuant to medical emergency); Miss. Code Ann. § 41-41-57 (requirements do not apply when physician determines medical emergency exists); Mont. Code Ann. § 50-20-208 (notice not required if physician certifies medical emergency exists); Neb. Rev. Stat. § 71-6906 (notice not required if physician certifies immediate threat and grave risk to life or health of minor); Nev. Rev. Stat. § 442.255 (notice not required if life or health of minor is in immediate danger); N.C. Gen. Stat. § 90-21.9 (requirements do not apply when physician determines medical emergency exists); 18 Pa. Cons. Stat. § 3206 (consent not required in case of medical emergency); R.I. Gen. Laws § 23-4.7-4 (requirements waived where emergency exists); S.C. Code Ann. § 44-41-30 (consent waived where physician determines medical emergency exists involving life of or grave physical injury to minor); S.D. Codified Laws § 20-9-4.2 (consent not required where delay would threaten minor's life or health); Tenn. Code Ann. § 37-10-305 (requirements do not apply when physician determines medical emergency exists); Tex. Fam. Code Ann. § 33.002 (notice not required when physician determines immediate abortion necessary to avert minor's death or avoid serious risk of substantial and irreversible impairment of major bodily function of minor); W. Va. Code § 16-2F-5 (requirements do not apply where emergency exists which constitutes immediate threat and grave risk to life or health of minor); Wis. Stat. § 48.375 (requirements do not apply where physician determines medical emergency exists).

Colorado law.  (Appellants' Br. at 12.)  In particular, the State points to § 19-1-104(3) of the Colorado Revised Statutes—part of the Colorado Children's Code—which allows a state juvenile court to grant authorization for emergency medical treatment for a minor when "reasonable effort" is not sufficient to notify the minor's parents.  This provision of Colorado law, the State claims, effectively creates a health exception to the PNA that satisfies constitutional requirements.[10]

---

[10]  The State also argues that a physician is "relieved of the waiting requirements of the Act by notifying the parent and either receiving permission to proceed or by reporting the child as neglected."  (Appellants' Br. at 20.)

However, the plain language of the PNA excludes the first option—even if a parent is notified and provides permission, the forty-eight-hour delay is only waived if the permission is provided in writing.  Colo. Rev. Stat. § 12-37.5-105(1).  The writing requirement could create substantial delay that might harm a pregnant woman's health in a medical emergency situation.  Moreover, this exception is only operative if the parent can be contacted at the time of the medical emergency.

The second option—reporting a parent as abusive or neglectful—would seem to be an unwarranted response to a medical emergency where the difficulty of obtaining parental consent is due not to the refusal of a parent to consent, but rather to an inability to contact the parent during the minutes or hours within which a doctor must respond to a medical emergency.  Such a situation does not appear to be what the Colorado legislature had in mind when it defined "child abuse or neglect" in the Children's Code to include physical violence, id. § 19-1-103(1)(a)(I), sexual assault or molestation, § 19-1-103(1)(a)(II), failure to provide the care that "a prudent parent" would provide, § 19-1-103(1)(a)(III), "emotional abuse," § 19-1-103(1)(a)(IV), or abandonment, § 19-1-103(1)(a)(V).  It also does not appear to be what the legislature had in mind when it established a requirement that all reports of "abuse or neglect" be forwarded to appropriate government or law enforcement authorities, id. § 19-3-307(1), and that those authorities undertake an assessment of the situation, id. § 19-3-308(1)(a), with the possibility of criminal charges or removal of the child from home, id. § 19-3-307(4)(b).

In analyzing the State's argument, we rely on Colorado's principles and laws of statutory construction to interpret the PNA and other Colorado statutes as the Colorado state courts would interpret them. Phelps v. Hamilton, 59 F.3d 1058, 1071 (10th Cir. 1995).[11]

We agree with the district court that the language of the PNA is clear and unambiguous. "No abortion shall be performed" without written notice and the forty-eight-hour delay. Colo. Rev. Stat. § 12-37.5-104(1) (emphasis added). As noted earlier, the statute provides two, and only two, exceptions to the notice and waiting period requirements: No notice is required if the parent or parents certify in writing that they have been notified, id. § 12-37.5-105(a), and no notice is required if the pregnant minor declares—and the attending physician reports—that she is a victim of abuse or neglect, § 12-37.5-105(b). In addition, the PNA provides for two, and only two, affirmative defenses to prosecutions under the Act: The physician reasonably relied on the representations of the pregnant minor regarding information necessary to comply with the PNA, id. § 12-37.5-106(2)(a), or an abortion was necessary to prevent the "imminent death of the minor child"

---

[11] The fact that the PNA was adopted by initiative, rather than by the Colorado legislature, does not alter the approach to statutory interpretation relied upon by Colorado courts. See Common Sense Alliance v. Davidson, 995 P.2d 748, 754 (Colo. 2000) (en banc) (citing Bickel v. City of Boulder, 885 P.2d 215, 228 n.10 (Colo. 1994) (en banc), for the proposition that "the general rules of statutory construction apply when interpreting citizen-initiated measures").

and there was "insufficient time to provide the required notice," § 12-37.5-106(2)(b).[12]  Thus, the PNA provides for a near-absolute rule that abortions are not to be performed on minor children unless notice is provided and the forty-eight-hour waiting period has expired.

We further agree with the district court that where a statute is clear and unambiguous, the Colorado Supreme Court refuses to apply any rules of statutory construction.  See, e.g., Nicholas v. People, 973 P.2d 1213, 1216 (Colo. 1999) (en banc) ("Where the language is clear and unambiguous, we need not resort to rules of statutory construction." (quotation omitted)).  Thus, the State's argument that we should use the doctrine of in pari materia, a rule of statutory construction, to interpret the Children's Code provision as providing a health exception to the PNA is unavailing.[13]

The State urges us to apply the maxim that whenever possible statutes should be construed to avoid serious doubts as to their constitutionality.  See, e.g., Communications Workers of Am. v. Beck, 487 U.S. 735, 762 (1988) (discussing

---

[12]  The State does not argue that the "imminent death" provision provides an adequate health exception for the PNA.  We independently conclude that this provision is not an adequate health exception, as the Supreme Court has held that exceptions solely to protect the life of the mother are not constitutionally sufficient.  See Roe, 410 U.S. at 163–64.

[13]  Under the doctrine of in pari materia, a court will interpret a statute by examining other statutes dealing with the same subject as the statute being construed.  2B Norman J. Singer, Statutes and Statutory Construction § 51.01 (6th ed. 2000).

federal statutes); Colo. Ground Water Comm'n v. Eagle Peak Farms, Ltd., 919 P.2d 212, 221 (Colo. 1996) (en banc) (discussing Colorado statutes). If we chose to interpret the Children's Code judicial approval provision as remaining in effect with respect to abortion, and if the Children's Code provision met the constitutional requirements for a health exception, then this interpretation would save the PNA from unconstitutionality. However, as the Supreme Court of Colorado has noted, "[W]e must give full effect to the language used by the General Assembly even if to do so results in a determination that the statute violates constitutional criteria." People v. Thomas, 867 P.2d 880, 883 (Colo. 1994) (en banc); see also Phelps, 59 F.3d at 1070 ("The federal courts do not have the power to narrow a state law by disregarding plain language in the statute just to preserve it from constitutional attack."). The language of the PNA is clear that there is no health exception; therefore, the maxim does not apply.

## C

We perceive only one way that would allow us to consider the State's Children's Code argument in light of the plain language of the PNA—if we first concluded that the Children's Code judicial approval provision and the PNA were in conflict. In such a circumstance, we would be required to attempt to reconcile the two statutes. Scholz v. Metro. Pathologists, P.C., 851 P.2d 901, 911 (Colo. 1993) (en banc) ("[W]hen two statutes apparently conflict, a court will strive to

read them harmoniously so as to give effect to both."). However, following Colorado's principles of statutory interpretation, we nonetheless conclude that, even if a conflict exists, the PNA has superseded the conflicting provisions of the Children's Code.

Arguably, the PNA and the Children's Code conflict. The PNA by its terms requires compliance with its notice requirements and with its forty-eight-hour waiting period except for specified exceptions and affirmative defenses. In contrast, the Children's Code authorizes judicial approval of emergency medical care—such as an abortion—when the parents cannot be contacted. "A conflict exists when one provision authorizes what the other forbids or forbids what the other authorizes." Bickel v. City of Boulder, 885 P.2d 215, 228–29 (Colo. 1994) (en banc);[14] Ray v. City & County of Denver, 121 P.2d 886, 888 (Colo. 1942) (en banc).

In the case of a conflict, we look to see how the courts of Colorado would construe the PNA and the Children's Code judicial approval provision in order to reconcile them. As discussed above, the PNA has a clear and unambiguous

---

[14] Bickel dealt with a potential conflict between a statute and a constitutional provision. See Bickel, 885 P.2d at 220. However, in Colorado rules of constitutional interpretation may be utilized in developing rules of statutory interpretation. See Common Sense Alliance, 995 P.2d at 753–54 (citing previous Colorado constitutional interpretation cases for interpretation principles to be applied in the statutory context).

- 23 -

prohibition against the performance of abortions on minors absent compliance with the notice and forty-eight-hour waiting period requirements, subject to specified exceptions and affirmative defenses. Moreover, the PNA is specific in its notification requirements, laying out precisely who may deliver the notice, Colo. Rev. Stat. § 12-37.5-104(a), the manner of delivery of the notice (including the language to be placed on the envelope containing the notice), § 12-37.5-104(b), and how to maintain the records for the written return of service of the notice, § 12-37.5-104(d).

In contrast, the Children's Code broadly authorizes the provision of medical services on an emergency basis, as required only by the "best interest" of the child, upon authorization by a judge. Id. § 19-1-104(3)(a). Notice to parents is necessary only if "reasonable effort" allows such notice in an emergency situation. § 19-1-104(3)(b). There are no procedural requirements for the provision of notice.

The parties in this case have, explicitly or implicitly, suggested to us only two options for reconciling the PNA and the Children's Code. First, we could read the judicial approval provision of the Children's Code as remaining in force with respect to abortions, effectively carving out an additional exception from the PNA. This exception would theoretically apply whenever a doctor obtains permission from the juvenile court to provide a minor with an abortion when there

is a medical emergency and when notice (without the procedural requirements of the PNA) cannot reasonably be provided to the parent. This is the alternative that the State urges upon us. Second, we could read the PNA as carving an exception from the Children's Code—in essence requiring parental consent for all abortions, irrespective of the judicial approval provision of § 19-1-104(3). In other words, for all medical procedures except abortion the judicial approval provision would remain, but for abortion the new and more stringent parental notice requirements of the PNA would apply. This is the interpretation implicitly supported by plaintiffs.

Our options are thus limited to choosing which statute overrides the other, because regardless of which provision we conclude the legislature intended to effectuate, the result will by necessity abrogate the other statute in part. If we hold that the PNA carves an exception from the Children's Code, then we have recognized a narrow exception to a statute of broad applicability. For almost all medical services, the provisions of the Children's Code will continue to apply, but for abortions only, there will be a specific rule with more stringent parental notice requirements. On the other hand, if we hold that the Children's Code was not superseded by the PNA and therefore remains effective in the abortion context, then we have recognized an additional exception to a statute of narrow applicability. The PNA's parental notice requirements will not apply any time a

medical emergency requires provision of an abortion to a minor where parental notice cannot be made with "reasonable effort." Instead of only the four specific and enumerated exceptions and affirmative defenses to the PNA, there would also be a fifth.

We, of course, have no desire or authority to draft legislation—it is simply not our constitutional prerogative to do so. We therefore choose the option that best gives effect to both the PNA and the Children's Code, and we hold that the PNA has superseded the Children's Code. Under this interpretation the strict parental notice requirements of the PNA would stand and not infringe on the Children's Code provisions in the vast majority of medical emergencies. Cf. Zaner v. City of Brighton, 899 P.2d 263, 267 (Colo. Ct. App. 1995) (adopting an interpretation of a constitutional amendment because it allows the amendment to be effective "while preserving [other conflicting] constitutional provisions to the greatest degree possible"), aff'd, 917 P.2d 280 (Colo. 1996). The result of this conclusion, of course, is that the PNA must be held unconstitutional because it lacks a health exception.

This conclusion is consistent with Colorado statutory construction principles, which dictate that if two statutes irreconcilably conflict, then the later, more specific statute prevails. See Colo. Rev. Stat. §§ 2-4-205, -206; see also Martin v. People, 27 P.3d 846, 852 (Colo. 2001) (en banc). The PNA is more

specific than the Children's Code provisions because it addresses the specific

issue of parental notification for abortions by minors rather than the larger issue

of children's medical emergencies in general. The PNA was also enacted well

after the relevant provisions of the Children's Code. Thus, if there is a conflict,

because these statutes are irreconcilable we conclude that the provisions of the

PNA supersede § 19-1-104(3) with regard to the provision of notice to parents

about abortions.[15]

Other general principles of Colorado statutory construction support this

conclusion.[16] First, "as a general rule of statutory construction, [the] enumeration

_____

[15] While it is true that repeals by implication are not favored in Colorado, if there is a "manifest inconsistency between a later and an earlier statute . . . a repeal by implication [will] be held to have occurred." People v. James, 497 P.2d 1256, 1257 (Colo. 1972) (en banc). We are not faced with a case where a general statute is being interpreted to repeal by implication a specific statute—a situation in which Colorado courts have required a showing of "clear and unmistakable intent," Martin, 27 P.3d at 863 (Colo. 2001) (en banc); see also People v. Smith, 971 P.2d 1056, 1058 (Colo. 1999) (en banc). Instead, this is a case where a specific statute, the PNA, is interpreted to have established an exception to a general statute, the Children's Code judicial approval provision. Moreover, Colorado does not require that the later statute expressly state that it is repealing the previous statute. State v. Beckman, 368 P.2d 793, 797 (Colo. 1961) (en banc) ("[A] specific legislative declaration that a later law repeals any provisions of an earlier law in conflict with the later law is superfluous since a later law automatically repeals an earlier law which conflicts with it.").

[16] The State urges that we to give deference to its interpretation of the statute because it is the construction provided by the Colorado Attorney General, the chief officer in charge of enforcing the statute. However, as noted by the Supreme Court in Stenberg, such an interpretation is not to be taken as authoritative or to have controlling weight when the interpretation "does not bind

(continued...)

- 27 -

of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically excluded." Nicholas, 973 P.2d at 1217 (quotation omitted). Following the State's argument would result in recognizing a new exception to a statute that contains a list of specific exceptions; this is a form of statutory interpretation that the Colorado courts have avoided. See id. at 1216–17 (holding that a good-faith exception cannot be read into a statute requiring the presence of a parent when a juvenile is interrogated by the police because the statute already has enumerated exceptions).

Moreover, the drafters of the PNA were aware of the potential for interaction with the Children's Code and cited relevant provisions where necessary. See Colo. Rev. Stat. § 12-37.5-105(1)(b) (referring to the provisions of the Children's Code for "abuse or neglect" in order to explicate the exception to the notice requirement in the PNA). Clearly, the drafters knew how to reference the Children's Code where the PNA was intended to be coordinated

---

[16](...continued)
the state courts or local law enforcement authorities." Stenberg, 530 U.S. at 940–41 (quotation omitted). The State has given no indication that the Attorney General's opinion might have controlling weight either with local law enforcement or in state court, other than a citation to § 18-1-504(2)(c) of the Colorado Revised Statutes. This provision provides an affirmative defense to criminal liability where there has been reliance on an "official written interpretation of the statute." Colo. Rev. Stat. § 18-1-504(2)(c). The State has provided us with no official written interpretation of the statute provided by the Attorney General respecting the PNA, and therefore, § 18-1-504(2)(c) is inapplicable.

with these provisions; if the medical emergency procedures of § 19-1-104(3) were intended to have been preserved by the PNA, it would have been a simple matter to refer to them in the Act. See Common Sense Alliance, 995 P.2d at 754 ("The electorate, as well as the legislature, must be presumed to know the existing law at the time they amend or clarify that law.").[17]

_____

[17] The State argues that the PNA's legislative declaration indicates a desire to promote the best interests of children, such that the PNA must be interpreted to incorporate implicitly the Children's Code provision. Even assuming that the references in the legislative declaration to the "adverse long-term consequences" that attend abortion by minor children, Colo. Rev. Stat. § 12-37.5-102(1), means that the voters of Colorado intended the statute to promote the best interests of children, this reference must be read in the context of the other goals expressed in the legislative declaration, including the "rights of parents . . . to be involved in all decisions of importance affecting . . . minor children." Id. There are multiple goals expressed in the legislative declaration, including providing for the best interests of children and requiring that parents be notified of any abortions by their minor children. Given the multiple goals expressed in the legislative declaration, we cannot conclude that the "adverse long-term consequences" language cited by the State is enough to trump principles of Colorado statutory interpretation and the clear structure of the PNA.

Similarly, the State relies on another part of the legislative declaration, which states, "The people of the state of Colorado, being mindful of the limitations imposed upon them at the present time by the federal judiciary in the preservation of the parent-child relationship, hereby enact into law the following provisions." § 12-37.5-102(2). According to the State, the PNA "clearly states the intention to adhere to constitutional requirements." (Appellants' Br. at 14.) Again, given the multiple goals expressed in the legislative declaration, we cannot take this individual sentence in the legislative declaration as sufficiently demonstrative of a legislative intent to override established principles of Colorado statutory interpretation and the structure of the PNA. See Common Sense Alliance, 995 P.2d at 753 (quoting In re Great Outdoors Colo. Trust Fund, 913 P.2d 533, 540 (Colo. 1996) (en banc), for the proposition that "when courts construe an initiative, 'any intent of the proponents that is not adequately

(continued...)

- 29 -

Nor does the State's argument that statutes should be construed whenever possible to avoid serious doubts as to their constitutionality alter our conclusion. Again, the language of the PNA is clear that there is no health exception, and the State's proposed interpretation of the PNA and the Children's Code would require us to ignore other equally relevant Colorado statutory interpretation principles. We are only to consider interpretations of statutes that are "fairly possible," Communications Workers of Am., 487 U.S. at 762, and the State's suggested interpretation is not fairly possible.

**IV**

We conclude that the PNA is unconstitutional because it fails to provide a health exception as required by the Constitution of the United States.[18]  The

---

[17](...continued)
expressed in the language of the measure will not govern the court's construction of the amendment'").

[18]  In its reply brief, the State argues that § 18-1-703(1)(e) of the Colorado Revised Statutes also provides a health exception to the PNA.  Because this issue was raised for the first time in the State's reply brief, we do not address it here. See Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000).

The dissent suggests that our opinion "side steps" this argument, and that even though we ordinarily do not address such late-blooming arguments, in the present case we should nonetheless address the issue.  (Dissent at 7.)  However, in the present case there are good reasons for invoking the rule against consideration of arguments first raised in a reply brief.  First, "to allow an appellant to raise new arguments at this juncture would be 'manifestly unfair to the appellee who, under our rules, has no opportunity for a written response.'" Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1278 (10th Cir. 1994) (quoting Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 196 (D.C. Cir. 1992)).  Second,

(continued...)

[18](...continued)
it would also be unfair to the court itself, which, without the benefit of a response from appellee to an appellant's late-blooming argument, would run the risk of an improvident or ill-advised opinion, given our dependence as an Article III court on the adversarial process for sharpening the issues for decision.

Id. (quotation omitted). These considerations apply with special force in this case, where the State has developed a wholly new theory as to why the PNA contains a constitutionally adequate health exception.

We add that the State also failed to raise its argument in the trial court below. As we have explained,

Where a litigant changes to a new theory on appeal that falls under the same general category as an argument presented at trial . . . the theory will not be considered on appeal. . . . Furthermore, [appellant's] new argument gives rise to a host of new issues, and [appellee] had no opportunity to present evidence it may have thought relevant to these issues. Fear of such an unjust occurrence is one of the primary rationales underlying the rule that appellate courts do not hear issues not previously raised.

Bancamerica Commercial Corp v. Mosher Steel of Kan., Inc., 100 F.3d 792, 798 (10th Cir. 1996) (quotation omitted); see also Tele-Communications, Inc. v. Comm'r of Internal Revenue, 104 F.3d 1229, 1232 (10th Cir. 1997) ("This rule is particularly apt when dealing with an appeal from a grant of summary judgment . . . . Propounding new arguments on appeal in an attempt to prompt us to reverse the trial court undermines important judicial values." (citation omitted)). In the present case, plaintiffs were deprived of the opportunity to challenge the argument in the district court and to develop facts as to whether § 18-1-703(1)(e) would supply a constitutionally adequate health exception. Both parties had such an opportunity with respect to the State's Children's Code argument and took full advantage of that opportunity, spending significant portions of their discovery investigating the scope and nature of the Children's Code and the impact that the Code has had on physicians who provide abortion and other pregnancy services to minors. It would be unfair to rule on the State's argument based on § 18-1-703 without providing plaintiffs with a similar

(continued...)

- 31 -

judgment of the district court is therefore **AFFIRMED**.[19]

---

[18](...continued)
opportunity with respect to that issue as well. Thus, the State has doubly waived the issue.

Moreover, the exceptions to the rule in Headrick are exceedingly narrow, and are limited to issues such as jurisdiction and "plain error" by the lower courts. See Herbert, 974 F.2d at 196; accord Headrick, 24 F.3d at 1278. We do not see the fact that the district court did not address the State's unraised argument regarding § 18-1-703(1)(e) as providing an example of "plain error," or indeed any error at all. To the extent that the PNA and § 18-1-703(1)(e) conflict, we conclude that the two statutes irreconcilably conflict and that the PNA supersedes § 18-1-703(1)(e). See Section III.C, supra. In particular, we note that the PNA contains specific procedures for obtaining parental consent, while § 18-1-703(1)(e) provides an affirmative defense for any medical treatment the physician "reasonably believes to be adapted to promoting the physical or mental health of the patient." Section 18-1-703(1)(e) is also a more general statute—as it applies to all medical procedures—and was enacted prior to the PNA. Thus, the rule in Colorado that the more specific and later statute trumps the more general and earlier statute would apply. See Colo. Rev. Stat. §§ 2-4-205, -206; see also Martin, 27 P.3d at 852. Furthermore, the State's proposed interpretation would create a new exception to the PNA where the statute already has specific, enumerated exceptions—a result that the Colorado courts disfavor. See Nicholas, 973 P.2d at 1217. Finally, the State's proposed interpretation, by creating a new affirmative defense for when the physician "reasonably believes" that there is no time to obtain consent in the context of a medical emergency, would essentially render the PNA's affirmative defense for situations threatening imminent death superfluous, see Colo. Rev. Stat. § 12-37.5-106(2)(b), contrary to an important principle of statutory interpretation in Colorado. See People v. Hoinville, 553 P.2d 777, 781 (Colo. 1976) (en banc); see also Colo. Rev. Stat. § 2-4-201(b) (establishing the presumption that the entirety of a statute was intended to be effective).

[19] The dissent argues that we should certify this case to the Colorado Supreme Court in order to obtain a definitive interpretation of the PNA. (Dissent at 4–6.) It asserts that "the Colorado Supreme Court could render a reasonable limiting construction of the [PNA] to preserve it consistent with its intended applications." (Id. at 8–9.) However, as Part III of this Opinion shows, no such construction is fairly possible. As a result, we decline to certify or abstain

(continued...)

because the statute is not "fairly susceptible to a narrowing construction." Stenberg, 530 U.S. at 945 (quotation omitted).

We are especially skeptical of certifying this case not only because the parties expressly rejected the district court's suggestion of certification, Planned Parenthood, 107 F. Supp. 2d at 1275 ("Upon my inquiry, all parties recommended against certification of the issues to the Colorado Supreme Court . . . . Both sides in essence urged that the issues of this case, including any necessary statutory interpretation of state law, were inextricably tied to issues of federal constitutional law and should be decided in federal court."), but also because the State—the party that is allegedly being harmed by our failure to certify—is the party that removed this case from state court to federal court in the first place, id. (characterizing the State's rejection of certification to state court as "consistent with the [State's] decision to remove this case to federal court").

# APPENDIX

§ 12-37.5-101.  Short title.  This article shall be known and may be cited as the "Colorado Parental Notification Act."

§ 12-37.5-102.  Legislative declaration.  (1) The people of the state of Colorado, pursuant to the powers reserved to them in Article V of the Constitution of the state of Colorado, declare that family life and the preservation of the traditional family unit are of vital importance to the continuation of an orderly society; that the rights of parents to rear and nurture their children during their formative years and to be involved in all decisions of importance affecting such minor children should be protected and encouraged, especially as such parental involvement relates to the pregnancy of an unemancipated minor, recognizing that the decision by any such minor to submit to an abortion may have adverse long-term consequences for her.

(2) The people of the state of Colorado, being mindful of the limitations imposed upon them at the present time by the federal judiciary in the preservation of the parent-child relationship, hereby enact into law the following provisions.

§ 12-37.5-103.  Definitions.  As used in this article, unless the context otherwise requires:

(1) "Minor" means a person under eighteen years of age.

(2) "Parent" means the natural or adoptive mother and father of the minor who is pregnant, if they are both living; one parent of the minor if only one is living, or if the other parent cannot be served with notice, as hereinafter provided; or the court-appointed guardian of such minor if she has one or any foster parent to whom the care and custody of such minor shall have been assigned by any agency of the state or county making such placement.

(3) "Abortion" for purposes of this article means the use of any means to terminate the pregnancy of a minor with knowledge that the termination by those means will, with reasonable likelihood, cause the death of that person's unborn offspring at any time after fertilization.

§ 12-37.5-104.  Notification concerning abortion.  (1) No abortion shall be performed upon an unemancipated minor until at least 48

hours after written notice of the pending abortion has been delivered in the following manner:

(a) The notice shall be addressed to the parent at the dwelling house or usual place of abode of the parent. Such notice shall be delivered to the parent by:

(I) The attending physician or member of the physician's immediate staff who is over the age of eighteen; or

(II) By the sheriff of the county where the service of notice is made, or by his deputy; or

(III) By any other person over the age of eighteen years who is not related to the minor.

(b) Notice delivered by any person other than the attending physician shall be furnished to and delivered by such person in a sealed envelope marked "Personal and Confidential" and its content shall not in any manner be revealed to the person making such delivery.

(c) Whenever the parent of the minor includes two persons to be notified as provided in this article and such persons reside at the same dwelling house or place of abode, delivery to one such person shall constitute delivery to both, and the 48-hour period shall commence when delivery is made. Should such persons not reside together and delivery of notice can be made to each of them, notice shall be delivered to both parents, unless the minor shall request that only one parent be notified, which request shall be honored and shall be noted by the physician in the minor's medical record. Whenever the parties are separately served with notice, the 48-hour period shall commence upon delivery of the first notice.

(d) The person delivering such notice, if other than the physician, shall provide to the physician a written return of service at the earliest practical time, as follows:

(I) If served by the sheriff or his deputy, by his certificate with a statement as to date, place, and manner of service and the time such delivery was made.

(II) If by any other person, by his affidavit thereof with the same statement.

(III) Return of service shall be maintained by the physician.

(e)(I) In lieu of personal delivery of the notice, the same may be sent by postpaid certified mail, addressed to the parent at the usual place of abode of the parent, with return receipt requested and delivery restricted to the addressee. Delivery shall be conclusively

presumed to occur and the 48-hour time period as provided in this article shall commence to run at 12:00 o'clock noon on the next day on which regular mail delivery takes place.

(II) Whenever the parent of the minor includes two persons to be notified as provided in this article and such persons reside at the same dwelling house or place of abode, notice addressed to one parent and mailed as provided in the foregoing subparagraph shall be deemed to be delivery of notice to both such persons. Should such persons not reside together and notice can be mailed to each of them, such notice shall be separately mailed to both parents unless the minor shall request that only one parent shall be notified, which request shall be honored and shall be noted by the physician in the minor's medical record.

(III) Proof of mailing and the delivery or attempted delivery shall be maintained by the physician.

§ 12-37.5-105. No notice required—when. (1) No notice shall be required pursuant to this article if:

(a) The person or persons who are entitled to notice certify in writing that they have been notified;

(b) The pregnant minor declares that she is a victim of child abuse or neglect by the acts or omissions of the person who would be entitled to notice, as such acts or omissions are defined in "The Child Protection Act of 1987", as set forth in title 19, article 3, of the Colorado Revised Statutes, and any amendments thereto, and the attending physician has reported such child abuse or neglect as required by the said act.

§ 12-37.5-106. Penalties—damages—defenses. (1) Any person who performs or attempts to perform an abortion in willful violation of this article:

(a) Commits a class 1 misdemeanor and shall be punished as provided in section 18-1-106 C.R.S.; and

(b) Shall be liable for damages proximately caused thereby.

(2) It shall be an affirmative defense to any criminal or civil proceedings if the person establishes that:

(a) The person relied upon facts or information sufficient to convince a reasonable, careful and prudent person that the representations of the pregnant minor regarding information necessary to comply with this article were bona fide and true; or

(b) The abortion was performed to prevent the imminent death of the minor child and there was insufficient time to provide the required notice.

(3) Any person who counsels, advises, encourages or conspires to induce or persuade any pregnant minor to furnish any physician with false information, whether oral or written, concerning the minors' age, marital status, or any other fact or circumstance to induce or attempt to induce the physician to perform an abortion upon such minor without providing written notice as required by this article commits a Class 5 felony and shall be punished as provided in section 18-1-105, C.R.S.

§ 12-37.5-107. Judicial bypass—when operative. (1) If section 12-37.5-104 of this article is ever temporarily, preliminarily or permanently restrained or enjoined due to the absence of a judicial bypass provision, the said section shall be enforced as though the following provisions were incorporated as subsection (2) of section 104, provided however that if any such restraining order or injunction is stayed, dissolved or otherwise ceases to have effect, section 104 shall have full force and effect without the addition of the following subsection (2):

(2)(a) If any pregnant minor elects not to allow the notification of any parent, any judge of a court of competent jurisdiction may, upon petition filed by or on behalf of such minor enter an order dispensing with the notice requirements of this article if the Judge determines that the giving of such notice will not be in the best interest of the minor, or if the court finds, by clear and convincing evidence, that the minor is sufficiently mature to decide whether to have an abortion. Any such order shall include specific factual findings and legal conclusions in support thereof and a certified copy of such order shall be provided to the attending physician of said minor and the provisions of section 12-37.5-104(1) and section 12-37.5-106 of this article shall not apply to the physician with respect to such minor.

(b) The court, in its discretion, may appoint a guardian ad litem for the minor and also an attorney if said minor is not represented by counsel.

(c) All court proceedings herein shall be confidential and shall be given preference over other pending matters, so that the court may reach a decision without undue delay.

(d) An expedited confidential appeal shall be available to any such minor for whom the court denies an order dispensing with notification as required by this article.  Upon the minor's representation as contained in her petition, or otherwise, that no funds are available to her for payment of filing fees, no filing fees shall be required in either the trial court or appellate court.

§ 12-37.5-108.  Limitations.  (1) This article shall in no way be construed so as to:

(a) Require any minor to submit to an abortion; or

(b) Prevent any minor from withdrawing her consent previously given to have an abortion; or

(c) Permit anything less than fully informed consent before submitting to an abortion.

(2) This article shall in no way be construed as either ratifying, granting or otherwise establishing an abortion right for minors independently of any other regulation, statute or court decision which may now or hereafter limit or abridge access to abortion by minors.

No. 00-1385, <u>Planned Parenthood v. Owens</u>

Baldock, Circuit Judge, dissenting.

As of this writing, a woman's fundamental constitutional right to abort a fetus previability–without "undue interference" from the state–is settled. See <u>Stenberg v. Carhart</u>, 530 U.S. 914, 946 (2000) (Stevens, J., concurring) ("[D]uring the past 27 years, the central holding of <u>Roe v. Wade</u>, 410 U.S. 113 (1973), has been endorsed by all but 4 of the 17 justices who have addressed the issue."). At the same time, Supreme Court Justices remain divided over state regulation of abortion, including regulation pertaining to minors. See <u>H.L. v. Matheson</u>, 450 U.S. 398, 413-14 (1981) (Powell, J., concurring) (noting the divisive nature of questions over state statutes intended to encourage parental involvement in a minor's decision to have an abortion). In a stream of opinions over the past three decades, the Justices have struggled to articulate meaningful standards for lower courts to apply. See <u>e.g.</u>, <u>Planned Parenthood v. Casey</u>, 505 U.S. 833, 950 (1992) (Rehnquist, C.J., dissenting in part) ("[W]hen confronted with state regulation . . . [of abortion], the Court has become increasingly more divided[.]") (citing cases). Justice White accurately predicted the future a quarter century ago: "In <u>Roe v. Wade</u> . . . this Court recognized a right to an abortion free from state prohibition. The task of policing this limitation on state police power is and will be a difficult and continuing venture in substantive due process." <u>Planned Parenthood v. Danforth</u>, 428 U.S. 52, 92 (1976) (White, J.,

dissenting in part). True to Justice White's words, state lawmakers continue to test the limits of <u>Roe</u> and courts continue to police those limits with no foreseeable end to the struggle.

Given Supreme Court precedent, I have little quarrel with the legal proposition that a state may not infringe on a woman's ability, regardless of her age, to obtain an abortion in a timely manner where medically necessary to proscribe a serious health risk. <u>See</u> Court's Op. at 8-12; <u>Stenberg</u>, 530 U.S. at 930-31 (state may promote but not endanger a woman's health when regulating abortion).[1] I do not agree, however, with the Court's conclusion that the voter initiated and approved Colorado Parental Notification Act, Colo. Rev. Stat.

---

[1] In <u>Casey</u>, Justice Stevens explained the existing legal rationale for "<u>why</u> the State's obligation to protect the health of the mother must take precedence over any duty to the unborn." (emphasis in original).

> The Court in <u>Roe</u> carefully considered, and rejected, the State's argument that a fetus is a "person" within the language and meaning of the Fourteenth Amendment. . . . In short, the unborn have never been recognized in the law as persons in the whole sense. Accordingly, an abortion is not the termination of life entitled to Fourteenth Amendment protection. From this holding, there was no dissent. Indeed, no Member of the Court has ever questioned this fundamental proposition. Thus, as a matter of federal constitutional law, a developing organism that is not yet a "person" does not have what is sometimes described as a "right to life." This has been and, by the Court's holding today, remains a fundamental premise of our constitutional law governing reproductive freedom.

<u>Casey</u>, 505 U.S. at 912-14 (Stevens, J., concurring in part) (internal quotations, citations, and footnote omitted).

§§ 12-37.5-101 thru 108 (2001) (CPNA), when construed under Colorado state law, <u>necessarily</u> "infringes on the ability of pregnant women to protect their health."[2]  Court's Op. at 17.  Nor do I agree with the Court's conclusion that the CPNA is unconstitutional <u>in its entirety</u> simply because it may "infringe on the ability of <u>any</u> pregnant woman to protect her health."  Court's Op. at 14 (emphasis in original).  In my opinion, the Court is much too eager to apply its view of Colorado state statutory interpretation to strike on its face, not a single prohibitory statute like that at issue in <u>Stenberg</u>, but a multi-section act directly approved by the voters of Colorado.  <u>See</u> Court's Op. at 17-30.  The Court declares the CPNA unconstitutional because it fails to address the availability of emergency medical procedures in the rare instance where a pregnant minor's health (but not life) is threatened and that minor cannot or does not wish to notify an unknowing parent.[3]

---

[2]  Colorado voters reportedly approved the CPNA at a general election held on November 3, 1998, by a vote of 708,689 to 582,102, or 55% to 45%.

[3]  Section 12-37.5-106(2)(b) of the CPNA provides an affirmative defense to a criminal charge under the CPNA if "[t]he abortion was performed to prevent the imminent death of the minor child and there was insufficient time to provide the required notice."  The district court briefly took issue with subsection (2)(b), asserting "an affirmative defense is significantly different from an exception to the reach of a criminal statute."  <u>Planned Parenthood v. Owens</u>, 107 F. Supp. 2d at 1271, 1283 (D. Colo. 2000).  Aside from the case where an exception to a penal statute constitutes an element of the offense, however, an exception operates the same as an affirmative defense.  <u>See</u> <u>United States v. Prentiss</u>, 256 F.3d 971, 978-80 (10th Cir. 2001) (en banc); <u>id.</u> at 986-89 (Baldock, J., dissenting in part).

Resolution of the narrow issue in this case, and the possible validity of the CPNA, unquestionably turns on the Court's application of Colorado state law.[4] Granted the Court's application of that law might be correct in whole or in part. But the CPNA, in my view, "is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem." Bellotti v. Baird, 428 U.S. 132, 147 (1976) (internal quotations omitted). Consequently, the Colorado Supreme Court, which has had no occasion to consider application of the CPNA, seems better suited than a federal court for that application in the first instance. Accordingly, I believe the preferable approach at this stage is to abstain from deciding the CPNA's constitutionality and to certify to the Colorado Supreme Court, pursuant to

---

[4] Given Supreme Court precedent discussing the constitutional demands for parental notification laws, Plaintiffs' remaining arguments as to why the CPNA is unconstitutional in whole or in part, see Court's Op. at 7 n.5, at least initially do not appear nearly as forceful as the health exception argument we address today. Indeed, the district court recognized that "parental notification statutes . . . have generally passed constitutional muster." Owens, 107 F. Supp. 2d at 1279; see also Lambert v. Wicklund, 520 U.S. 292 (1997) (per curiam) (collecting cases); Hodgson v. Minnesota, 497 U.S. 417, 448 (1990) (opinion of Stevens, J.) ("We think it clear that a requirement that a minor wait 48 hours after notifying a single parent of her intention to get an abortion would reasonably further the legitimate state interest in ensuring that the minor's decision is knowing and intelligent.").

the certification procedure outlined in Colo. Sup. Ct. R. 21.1., questions of

Colorado state law "which may be determinative" of this cause.[5]

In Bellotti, a three-judge district court held a Massachusetts parental

consent statute unconstitutional. Because the statute's constitutionality turned

on questions of state law, a unanimous Supreme Court vacated the district court's

judgment and directed the court to certify to the state's highest court "appropriate

questions concerning the meaning of [the statute] and the procedure it imposes."

Bellotti, 428 U.S. at 151. In abstaining, the Court explained:

> It is sufficient that the statute is susceptible of the interpretation
> offered by [the State], and we so find, and that such an interpretation
> would avoid or substantially modify the federal constitutional
> challenge to the statute, as it clearly would. Indeed, in the absence
> of an authoritative construction, it is impossible to define precisely
> the constitutional question presented.

Id. at 148; see also Akron v. Akron Center for Reproductive Health, 462 U.S.

416, 468-69 (1983) (O'Connor, J., dissenting) (arguing that despite the absence

of a certification procedure, the Court should have abstained from declaring

a parental consent provision of a municipal ordinance unconstitutional); but see

Stenberg, 530 U.S. at 945 (declining to employ a state certification procedure

---

[5] Colo. Sup. Ct. R. 21.1 provides that a federal court, upon its own motion, may certify questions of state law "which may be determinative of the cause then pending in the certifying court and as to which to the certifying court there is no controlling precedent in the decisions of the [Colorado] Supreme Court."

where a Nebraska statute banning "partial birth abortion" outright was not "fairly susceptible" to a "narrowing" construction).[6]

We must assume that the Colorado Supreme Court, if given its rightful opportunity, would seek to construe the CPNA consistent with constitutional requirements. "Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality." <u>Ohio v. Akron Center for Reproductive Health</u>, 497 U.S. 502, 514 (1990) (internal quotations omitted). The Colorado Supreme Court abides by this rule. In construing a statute chilling the fundamental right of speech, the court recently stated: "If a limiting construction or partial invalidation that confines the statute to sufficiently narrow applications can be applied, the court should construe the statute in light of that limiting construction." <u>People v. Hickman</u>, 988 P.2d 628, 636 (Colo. 1999). This is especially true where a statute's constitutionality is in question: "A court has a responsibility to apply a limiting construction or partial invalidation if doing so will preserve the statute's constitutionality." <u>Id.</u>

---

[6] In this case, the district court inquired into the possibility of certifying state law questions to the Colorado Supreme Court under Colo. Sup. Ct. R. 21.1, but the parties were unreceptive. See <u>Owens</u>, 107 F. Supp. 2d at 1275. Nevertheless, where appropriate, a federal court may consider abstention <u>sua sponte</u>. See <u>Bellotti</u>, 428 U.S. at 143-44 n.10; Colo. Sup. Ct. R 21.1(b). Citing the equitable nature of abstention, the Court in <u>Bellotti</u> noted "the fact that the full arguments in favor of abstention may not have been asserted in the District Court does not bar this Court's consideration of the issue." <u>Bellotti</u>, 428 U.S. 143 n.10.

Despite this responsibility, the Court side steps the State's belated but perhaps most forceful argument, namely that Colo. Rev. Stat. § 18-1-703(1)(e)(II) (2001), a part of the Colorado Criminal Code, provides the necessary health exception to the CPNA. <u>See</u> Court's Op. at 30-32 n.18. That section, which applies to criminal offenses generally, <u>exempts from criminal responsibility</u> medical personnel performing emergency procedures on minors:

(1) The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

. . .

(e) A duly licensed physician, or a person acting under his direction, may use reasonable and appropriate physical force for the purpose of administering a recognized form of treatment which he reasonably believes to be adapted to promoting the physical or mental health of the patient if:

. . .

(II) The treatment is administered in an emergency when the physician reasonably believes that no one competent to consent can be consulted and that a reasonable person, wishing to safeguard the welfare of the patient, would consent.

Given the Court's insistence to decide the CPNA's constitutionality, I cannot understand the Court's decision, based largely on procedural grounds, to shirk its responsibility to come to grips with § 18-1-703(1)(e)(II). To be sure, "this Court does not <u>ordinarily</u> review issues raised for the first time in a reply brief." <u>Stump v. Gates</u>, 211 F.3d 527, 533 (10th Cir. 2000) (emphasis added). But the ordinary rule is subject to exception, and this is no ordinary case. <u>Headrick v. Rockwell Int'l Corp.</u>, 24 F.3d 1272, 1278 (10th Cir. 1994)

- 7 -

(citing Herbert v. National Academy of Sciences, 974 F.2d 192, 196 (D.C. Cir. 1992) ("[T]here do exist circumstances in which a court may consider, or even raise sua sponte, arguments ignored or left undeveloped in the first round of briefing.")).  A federal court's decision to declare a state legislative act unconstitutional on its face is most invasive of state sovereignty.  Because such a decision extends far beyond the immediate parties, a federal court, in my opinion, should reach such a decision only after the utmost consideration.  This seems especially true where the court bases its decision solely upon an arguably erroneous application of state law principles.

The Court states that "[i]t would be unfair to rule on the State's argument based on § 18-1-703" without providing Plaintiffs an opportunity to respond.  Court's Op. at 31 n.18.  Of course, certifying the appropriate state law questions to the Colorado Supreme Court would give Plaintiffs ample opportunity to answer all the State's arguments.  Moreover, because the State has "agreed to refrain from enforcing the [CPNA] until entry of a final non-appealable judgment," Planned Parenthood v. Owens, 107 F. Supp. 2d 1271, 1275 (D. Colo. 2000), Plaintiffs stand to suffer no discernible injury if we employ Colorado's certification procedure.

Without unduly analyzing each of the acceptable possibilities, I believe the Colorado Supreme Court could render a reasonable limiting construction

- 8 -

of the CPNA to preserve it consistent with its intended applications. As the district court noted, nothing in the record suggests that Colorado voters in supporting the CPNA initiative "intend[ed] to place a pregnant minor's health at risk" contrary to the minor's best interests.[7] See Owens, 107 F. Supp. 2d at 1283 n.21; compare Thornburgh v. American College of Obstetricians and Gynecologists, 476 U.S. 747, 771 (1986) ("We necessarily conclude that the [Pennsylvania] legislature's failure to provide a medical-emergency exception . . . was intentional."), overruled in part on other grounds by Casey, 505 U.S. at 870, 882 (opinion of O'Connor, J.).

In the end, the Court concludes that a saving construction of the CPNA is not "fairly possible." Court's Op. at 30. I disagree. I am not convinced that, if called upon to construe the voter initiated and approved CPNA, the Colorado Supreme Court would refuse to narrow its application and construe it in a constitutional manner. Compare Matheson, 450 U.S. at 406-07 & n.14 (parental notification law which did not explicitly exempt pregnant minors with emergency health care needs did not give the Court "any reason to assume that a

---

[7] The Court recognizes that the Colorado Children's Code, specifically Colo. Rev. Stat. § 19-1-104(3) (2001) (CCC), "broadly authorizes the provision of medical services on an emergency basis, as required only by the 'best interest' of the child upon authorization by a judge." Court's Op. at 24. The Court, however, rejects the possibility that the CPNA may be construed in pari materia with the CCC despite the fact that reflected in both the CPNA and CCC is the judgment of the Colorado electorate that these laws are in the best interest of their youth.

minor in need of emergency treatment will be treated in any way different from a similarly situated adult"); <u>Rust v. Sullivan</u>, 500 U.S. 173, 195 (1991) (rejecting a facial challenge to federal regulations barring a federal project from referring women to abortion providers where the regulations did not explicitly exempt cases of "imminent peril" to the mother's life).

Today, the Court prematurely and perhaps unjustifiably thwarts the will of the Colorado electorate. Due to the lack of reasonable certainty as to how the CPNA will operate in its application or how the CPNA interacts with other Colorado laws, legislative or judicial, "our scrupulous regard for the rightful independence of state governments counsels against unnecessary [and premature] interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system." <u>Akron</u>, 462 U.S. at 470 (O'Connor, dissenting).

Accordingly, I dissent.