FILED
United States Court of Appeals
Tenth Circuit

April 21, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STANLEY CREWS,

    Plaintiff - Appellee,

v.

CLIFFORD PAINE; MICHAEL EATON,

    Defendants - Appellants,

and

CITY AND COUNTY OF DENVER
SCHOOL DISTRICT NO. 1, a/k/a Denver
Public Schools,

    Defendant.

No. 16-1216
(D.C. No. 1:13-CV-02912-MSK-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **HARTZ**, and **O'BRIEN**, Circuit Judges.
_____

   Following his termination as a patrol officer for the City and County of Denver

School District No. 1 (the District), plaintiff Stanley Crews brought this action

---

   [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

against the District, and against Sergeant Clifford Paine and Department Chief Michael Eaton in their individual capacities.[1] He asserted various claims against the District, but only one of these against the individual defendants as well: race discrimination in violation of his equal-protection rights, actionable under 42 U.S.C. §§ 1981 and 1983.[2] Sergeant Paine and Chief Eaton now appeal from the denial of their motion for summary judgment on the basis of qualified immunity. Our jurisdiction over this interlocutory appeal is limited to issues of law, which we review de novo. *See Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016). We affirm the denial of summary judgment as to Sergeant Paine, but remand for further consideration of Chief Eaton's motion for summary judgment.

## I. FACTUAL BACKGROUND

The district court's order contains a lengthy factual recitation, only some of which need be repeated here. Officer Crews is "a black man in his fifties, [who] worked for the [District] as an armed patrol officer in the Department of Safety and

---

[1] Other defendants originally named were dismissed in an early order that is not relevant to this appeal.

[2] This circuit has concluded that the holding in *Jett v. Dallas Independent School District*, 491 U.S. 701, 735 (1989), recognizing § 1983 as "the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor," remains good law. *See Bolden v. City of Topeka*, 441 F.3d 1129, 1135 (10th Cir. 2006); *see also Brown v. Sessoms*, 774 F.3d 1016, 1021 (D.C. Cir. 2014) (collecting cases). Moreover, Officer Crews does not advance any argument for distinguishing § 1981 from § 1983 with respect to the qualified-immunity defense at issue on this appeal. For simplicity, we therefore treat Officer Crews's claims as falling under § 1983.

Security . . . from May 1995 until he was terminated in February 2012." Aplt. App. at 186. "During the time period pertinent here, Mr. Crews worked the graveyard shift, generally alongside two other officers: John Linger, who is white, and Lawrence McFadden, who is Black." *Id.* "At the end of 2009, [Sergeant Paine] . . . became Mr. Crews' direct supervisor." *Id.* "In June 2011, Michael Eaton [became] . . . Department Chief." *Id.* at 190.

After recounting a history of friction between Officer Crews and Sergeant Paine, the district court summarized the incident leading directly to Officer Crews's termination as follows:

> At approximately 1:00 AM on January 24, 2012, Mr. Crews was dispatched . . . to respond to a burglary in progress at Wyman Elementary School. Another officer, Alix Two-Elk, was also dispatched. At the time, Officer Two-Elk had been a patrol officer with the District for approximately three months. It appears that the dispatcher determines which officer will be responsible for the matter, and the dispatcher identified Mr. Crews as the primary officer.
>
> Officer Two-Elk arrived first at the scene, followed by Mr. Crews several minutes later. Mr. Crews and Officer Two-Elk entered the building to assess the damage, which included a broken window. Officer Two-Elk contacted the dispatcher and informed him of the damage. Officer Two-Elk was told that the District's point of contact person and glass repair person would not arrive until the morning. Officer Two-Elk stayed on the scene to monitor the broken window and protect the premises. Mr. Crews notified dispatch that he would be handling patrol. Mr. Crews left the scene around 2:45 AM to respond to another call.
>
> Because Mr. Crews had to leave the Wyman scene, Officer Two-Elk and Mr. Crews agreed that Officer Two-Elk would write the primary incident report. Officer Two-Elk initially submitted the report as a "supplemental" report because that was the only report type he could access in the system due to being designated as the back-up officer, not the primary officer, by the dispatcher. Officer Two-Elk's report was submitted at 5:27 AM. Mr. Crews did not submit his report during his shift on

3

January 24th, nor did he contact a supervisor to obtain permission to withhold filing his report until the next shift.

After the Wyman incident, Sgt. Paine and Sgt. Wherli [sic] met with Mr. Crews and asked why he failed to timely file his report. Mr. Crews explained that he was unable to access the reporting system to complete the supplemental report. After receiving additional instruction from Sgt. Wherli [sic], Mr. Crews was able to complete his report. Later, Sgt. Paine changed the officers' designations in the reporting system to reflect that Officer Two-Elk was the primary officer and Mr. Crews was the back-up officer so that each officer could file the proper report. Sgt. Paine instructed Officer Two-Elk to "copy and paste" his original supplemental report onto the primary report. Sgt. Paine was concerned, however, because officers had been directed to contact a supervisor if they were having problems accessing the system, which Mr. Crews did not do.

On January 25, 2012, Sgt. Paine completed a[] Supervisor Insight report in which he recommended Mr. Crews be terminated.

*Id.* at 191-92 (footnote omitted).

Sergeant Paine's Insight Report accused Officer Crews of several policy violations in connection with the Wyman incident. The district court summarized these as follows. "First, [Sergeant Paine] asserted that Mr. Crews violated Policy 2.11, which requires that in the event several officers respond to a scene, the senior officer shall assume command and direction of personnel until a higher-ranking officer arrives or until the officer is relieved of duty." *Id.* at 192. "Second, Sgt. Paine also concluded that Mr. Crews violated Policy 2.56, which requires officers to submit necessary reports by the end of their shift except with supervisor approval. Sgt. Paine determined that Mr. Crews failed to timely submit his supplemental report and failed to obtain supervisor approval to hold the report." *Id.* "Third, Sgt. Paine concluded that Mr. Crews failed to comply with a Department

4

directive that required the primary officer to notify a supervisor when serious incidents, like burglaries, occur." *Id.* at 193.

After receiving Sergeant Paine's report and reviewing Officer Crews's personnel file, Chief Eaton met with Officer Crews and told him he could choose to retire or be terminated. When Officer Crews refused retirement, Chief Eaton terminated him. Officer Crews exhausted administrative remedies and then brought this action asserting, among other things, claims against the District, Sergeant Paine, and Chief Eaton under § 1983 for race discrimination. The three defendants moved for summary judgment on the claims, with the two officers arguing that they were entitled to qualified immunity. The district court denied this motion and the two officers appeal the denial of qualified immunity.

## II. DISTRICT-COURT RULINGS

In its order on summary judgment, the district court did not separately address the qualified-immunity defense raised by the officers. Following the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the court held that Officer Crews had demonstrated a triable claim of race discrimination. It said he had established a prima facie case with "colorable evidence that: (i) part of the justification for his termination was that he violated Policy 2.56 . . . by failing to promptly file his report on the Wyman incident; and (ii) that there is evidence that white officers, specifically, Mr. Linger, had failed to submit timely reports and was not disciplined [by the same supervisor, Sergeant Paine] as a result." Aplt. App. at 199. It also noted that "there is some evidence that Sgt. Paine acknowledged that

5

Mr. Crews and Mr. McFadden, the two black employees on the graveyard shift, were the ones that had the most difficulty in meeting his heightened expectations." *Id.* at 200.

The district court acknowledged that while the focus of the evidence of discriminatory motive concerned Sergeant Paine, it was Chief Eaton who actually made the decision to terminate Officer Crews. But it dealt with this complication by invoking the "cat's paw" doctrine, *see, e.g.*, *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514-15 (10th Cir. 2015), under which an employer may be held liable for an adverse action taken by an unbiased decisionmaker on the basis of a subordinate supervisor's racially motivated recommendation:

> As the District notes, Mr. Crews points to no evidence whatsoever that Chief Eaton might have harbored some racial animus against him. The court will not belabor the issue, except to refer to the "cat's paw" doctrine: the notion that a biased subordinate who lacked decisionmaking power used the formal decisionmaker as a dupe in a deliberate scheme to bring about an adverse employment action. Assuming, for the moment, that Sgt. Paine harbored some racial animus against Mr. Crews, Mr. Crews must then show facts that would suggest that Chief Eaton allowed himself to be influenced by Sgt. Paine's bias. Among the ways that an employee might show such influence is by showing that the nominal decisionmaker failed to independently investigate the alleged misconduct, such as by failing to even ask the employee for his own version of the events. Chief Eaton's affidavit indicates that he received Sgt. Paine's report of the Wyman incident, that he reviewed Mr. Crews' disciplinary record, and then decided to approve of Mr. Crews' termination. Although Chief Eaton met with Mr. Crews, it appears that he did so only to inform him that he was being terminated. As far as the record reflects, Chief Eaton did not independently interview Mr. Crews about the events, did not interview any other witnesses (*e.g.* Mr. Two-Elk or the dispatcher involved), and otherwise did not take any action that would dispel the effect of any animus that may have been injected into the process by Sgt. Paine. Thus, the mere fact that Chief Eaton was the nominal decisionmaker does not necessarily prevent

6

> Mr. Crews from establishing a *prima facie case* [of race discrimination] based on Sgt. Paine's actions.

Aplt. App. at 200-01 (citations and internal quotation marks omitted).

Turning to pretext, the district court "observe[d] that there is some evidence that many of the grounds cited by the District [i.e., those stated in Sergeant Paine's recommendation] for terminating Mr. Crews are contrary to what appears to have been accepted practices in the District." *Id.* at 202. For example, while Officer Crews was terminated in part for being the primary officer on the scene of the Wyman burglary but not contacting the on-call supervisor, the court noted that he had "come forward with evidence that, at least in practice, the District deemed the primary officer on the case to be the officer who arrived first (Mr. Two-Elk), rather than the officer designated by the dispatcher, and further, that officers customarily relied on the dispatcher to make contact with the on-call supervisor." *Id.* Citing *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000), the court held that by showing his "employer act[ed] contrary to an unwritten policy or company practice when making the decision to terminate," Officer Crews had "carried his burden of establishing a genuine dispute as to whether the employer's reason is pretextual," thereby defeating summary judgment on his race-discrimination claims. Aplt. App. at 202.

The district court's analysis, however, did not distinguish between the officers' personal liability and the District's liability as Officer Crews's employer. Thus it did not discuss the qualified-immunity defense exclusively available to, and asserted by,

the officers.  After they moved for reconsideration based in part on this omission, the

district court rejected the defense at a pretrial conference, stating:

> What I ruled [in denying the summary-judgment motions] was that there
> were sufficient facts to state a claim under Title VII and under 1981 and
> 1983 upon which a jury could reasonably find that Mr. Crews'
> constitutional rights were violated.  The question, then, is whether that right
> was clearly established.
>
> [A] right is clearly established if the plaintiff can point to Supreme
> Court or Tenth Circuit authority or the weight of authority from other
> courts that have found the law to be as the plaintiff maintains.  Here, the
> defendants argue that Mr. Crews cannot prove that it was clearly
> established that it was unlawful to terminate him for improper conduct and
> disciplinary infractions, but that is not the claim.  The claim is that he was
> terminated based on his race, and it is that claim that we look to in
> determining whether there was clearly established law.  So, in other words,
> we presume for purposes of analysis that there was a plausible claim for
> unlawful termination based on race.  And we look to whether there was
> clearly established law that would have put the defendants on notice that it
> was unlawful to terminate an individual based on race.
>
> It is clear that that was the law at the time. . . .

*Id.* at 236-37.  The district court concluded, "[T]he termination . . . either was lawful

or it wasn't, which is a factual issue that will be determined at the time of trial."  *Id.*

at 238.

## III.  REVIEW OF QUALIFIED-IMMUNITY RULING

### A.  Appellate Jurisdiction

Our jurisdiction to hear interlocutory appeals from the denial of summary

judgment on qualified-immunity grounds is limited to "abstract questions of law."

*Walton v. Powell*, 821 F.3d 1204, 1208 (10th Cir. 2016) (internal quotation marks

omitted).  Accordingly, with certain exceptions not relevant here, we must "accept as

8

true the facts the district court expressly held a reasonable jury could accept." *Id.* As we explained in *Walton*:

> [I[t is for the district court to tell us what facts a reasonable jury might accept as true. But . . . it is for this court to say whether those facts, together with all reasonable inferences they permit, fall in or out of legal bounds—whether they are or are not enough as a matter of law to permit a reasonable jury to issue a verdict for the plaintiff under the terms of the governing legal test for causation or any other legal element.

*Id.* at 1209-10.

In other words, assuming the truth of the historical facts for which the district court found sufficient evidence, we have jurisdiction on interlocutory appeal to determine whether those facts present a triable constitutional claim of discrimination and do so under clearly established law. On the other hand, to the extent that the defendants dispute determinations of historical fact, they raise matters beyond the permissible scope of their interlocutory appeal.

## B. Chief Eaton

The district court did not directly hold that Officer Crews had made a prima facie case of racial discrimination against Chief Eaton. Indeed, it observed that "Mr. Crews points to no evidence whatsoever that Chief Eaton [the actual decision maker] might have harbored some racial animus against him." Aplt. App. at 200. At that point in its analysis, the district court invoked the cat's paw theory to incorporate the discriminatory animus allegedly behind Sergeant Paine's recommendation for Officer Crews's termination—a course it deemed appropriate in light of the limited investigation conducted by Chief Eaton before implementing the recommendation.

9

But as Chief Eaton notes, that is a theory of *employer* liability under the employment-discrimination statutes, allowing a supervisor's improper animus to combine with an unbiased decisionmaker's adverse action to make the employing entity liable. Neither the district court nor Officer Crews cite any authority holding an unbiased decisionmaker *personally* liable under § 1983 for an adverse action allegedly traceable to another's improper animus. Indeed, such a holding would appear contrary to basic limits on personal liability under § 1983, which, eschewing principles of respondeat superior, make "each Government official . . . only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In any event, given the absence of precedent clearly establishing personal liability under § 1983 based on a cat's paw theory, Chief Eaton would be entitled to qualified immunity from liability on the basis of such a theory. *See, e.g.*, *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1104 (10th Cir. 2014) (summary judgment on basis of qualified immunity required when theory of liability relied on by plaintiff was not clearly established).

Officer Crews does not vigorously press the cat's paw theory. Rather, he argues that the limited nature of Chief Eaton's investigation is "evidence from which a jury could infer discriminatory animus" directly on Chief Eaton's part. Aplee. Br. at 16-17 (citing *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 543 (10th Cir. 2014)). In his response to the motion for summary judgment, Officer Crews raised an argument based on *Smothers* in opposition to the District's motion on the Title VII claim, which he incorporated into his opposition to Chief Eaton's motion on the

10

§ 1983 claim; but the district court did not address the point.[3]  We decline to do so in the first instance here.  We therefore remand the matter for the district court to reconsider Chief Eaton's entitlement to summary judgment in light of this argument.

## C.  Sergeant Paine

The situation is different for Sergeant Paine.  He has not shown that the district court erred in ruling that Officer Crews (1) satisfied the requirements of a prima facie case of discrimination[4] and (2) demonstrated a triable issue as to whether Sergeant Paine's stated basis for recommending his termination was pretextual.

Sergeant Paine raises only one challenge to the district court's determination that Officer Crews had presented a sufficient prima facie case.  In arriving at that determination the court stated that "there is evidence that white officers, specifically, Mr. Linger, had failed to submit timely reports and was not disciplined [by the same supervisor, Sergeant Paine] as a result."  Aplt. App. at 199.  (There is also evidence that not imposing discipline for untimely reports was a widespread practice in the District.)  Sergeant Paine asserts that there is no evidence that he was Linger's

---

[3] Although the district court touched on the limited nature of Chief Eaton's investigation in relation to whether Sergeant Paine's animus could be attributed to Chief Eaton under a cat's paw theory, it did not consider the different question whether Chief Eaton's conduct could independently raise an inference of discriminatory animus directly on his part under the *Smothers* analysis.

[4] Sergeant Paine insists that the only way to make a case for discrimination under the Equal Protection Clause is through similarly-situated-employee evidence. But the point is moot since Officer Crews has shown circumstances giving rise to an inference of discrimination through similarly-situated-employee evidence.

11

supervisor. But the district court specifically stated that "Mr. Linger was . . . subject to the same supervision of Sgt. Paine [as Officer Crews]." *Id.* This determination on a factual matter is not subject to review on this appeal. As discussed earlier, we are bound by the underlying historical facts accepted by the district court.

Sergeant Paine also challenges the sufficiency of Officer Crews's evidence of pretext with respect to three primary reasons Paine gave for recommending his termination, all relating to conduct in connection with the Wyman Elementary School burglary: (1) violation of district policy requiring officers to submit necessary reports by the end of their shift unless a delayed report is permitted by a supervisor; (2) violation of district policy requiring the senior officer at a scene to assume command until a higher-ranking officer arrives or until the senior officer is relieved of duty; and (3) noncompliance with a directive requiring the primary officer to notify a supervisor when serious incidents, such as a burglary, occur. As for the first ground, we have just referred to the district court's finding of sufficient evidence that Sergeant Paine did not consistently discipline officers for untimely reports. We must accept the district court's assessment of this factual matter. And the district court similarly found sufficient evidence of inconsistent District practices with respect to the last two grounds for termination. Again, we must accept these factual determinations. Because the factual foundation for the district court's determination of pretext is not subject to review, Sergeant Paine's challenge to the determination itself must fail.

In his reply brief Sergeant Paine argues that while this evidence of pretext may be probative against the District, it cannot be used against him individually because there is no evidence that he was personally aware of the practices that were inconsistent with the reasons he cited for recommending Crews's termination. But Sergeant Paine did not make this argument either in the district court or in his opening brief on appeal. We therefore have two procedural grounds for declining to consider it. *See Planned Parenthood of Rocky Mountains Servs., Corp. v. Owens*, 287 F.3d 910, 926 n.18 (10th Cir. 2002) (argument not raised in district court or in opening appellate brief had been "doubly waived").

Sergeant Paine further argues that even if Officer Crews has made out a triable case of racial discrimination, the law was not clearly established that his conduct violated the Constitution. He objects that in concluding otherwise the district court pitched the clearly-established-law inquiry at too high a level of generality; that while racial discrimination in employment is clearly impermissible on an abstract level, he had no reason to know that his specific actions in recommending Officer Crews's termination were constitutionally prohibited.[5] We disagree. Sergeant Paine does not, and could not, argue that the law is not clearly established that a supervisor

---

[5] Sergeant Paine also argues that application of the *McDonnell Douglas* framework to § 1983 claims against individual supervisors is not clearly established, notwithstanding our unqualified dictum that the framework applies in § 1983 cases, because we have thus far applied it only to § 1983 claims against employers. That is incorrect. We have applied it to § 1983 claims against supervisors in such cases as *Baca v. Sklar*, 398 F.3d 1210, 1216-18 & n.3 (10th Cir. 2005), and *Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176-77, 1180 (10th Cir. 2011).

can be liable for recommending—and thereby "setting in motion"—the termination of a subordinate based on a prohibited motive. *See Maestas v. Segura*, 416 F.3d 1182, 1191 (10th Cir. 2005) (recognizing that although defendant had not made the final decision to transfer plaintiffs, he "might still be liable if he possessed a retaliatory motive which set in motion the events that ultimately led to [their] transfers").

## IV. CONCLUSION

We affirm the district court's order insofar as it denied Sergeant Paine's motion for summary judgment based on qualified immunity, but we remand for further consideration of Chief Eaton's motion for summary judgment consistent with the analysis stated herein.

Entered for the Court

Harris L Hartz
Circuit Judge

14